**Ralph BROWN, Appellant,**

v.

**William H. FAUVER, Commissioner of Corrections; Elaine Ballai, Special Assistant for Legal Affairs; Ralph Smith, Disciplinary Hearing Officer; and E. Calvin Neubert, Superintendent, Leesburg State Prison.**

No. 86–5661.

United States Court of Appeals,
Third Circuit.

Argued April 20, 1987.

Decided May 18, 1987.

Rehearing and Rehearing In Banc Denied June 18, 1987.

Lyle P. Hough, Jr. (argued), Trenton, N.J., for appellant.

Stephen P. Tasy (argued), Deputy Atty. Gen., W. Cary Edwards, Atty. Gen. of N.J., Michael R. Clancy, Deputy Atty. Gen., Trenton, N.J., for appellees.

Before WEIS, STAPLETON, and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This is an appeal from a decision of the United States District Court for the District of New Jersey granting summary judgment to defendants-appellees, who are officials of the New Jersey Department of Corrections. The appellant, Ralph Brown, is an inmate of the Leesburg State Prison, and he filed this action in order to challenge the constitutionality of a prison disciplinary proceeding that resulted in a finding that Brown had violated prison regulations by assaulting a fellow inmate. Our jurisdiction over this case stems from 28 U.S.C. § 1291 (1982).

## FACTS AND PROCEEDINGS BELOW

On August 1, 1986, Brown received a written notice from a prison official advising that he had been charged with assaulting and doing bodily harm to inmate Michael Graham by striking Graham on the head with a hair clipper. On August 5, 1986, a hearing on the charges was held. The institution's evidence against Brown consisted of six investigative reports that revealed the following. On July 31, 1986, Sergeant Lester Ayars, a corrections officer at Leesburg, observed inmate Michael Graham as he was exiting one of the detention units. Ayars noticed that Graham was bleeding from his forehead, and Ayars, therefore, approached Graham to inquire about the injury. Graham stated that Brown had assaulted him and had hit him on the head with a pair of hair clippers. Sergeant Ayars allowed Graham to clean the wound and then escorted Graham to the prison infirmary. After Graham's injuries were treated, prison authorities offered to place Graham in protective custody. Graham declined and stated that he was not in fear of an attack on his person and that he, in fact, had sustained his head injury during an accidental trip and fall. At a later interview, however, Graham again claimed that Brown had attacked him with hair clippers. Graham explained that the attack followed an argument between Graham and Brown concerning a mutual female acquaintence.

Brown presented no witnesses at the hearing. He did, however, deny all culpability, and he expressed his belief that Graham is a chronic liar.

Ultimately, the hearing officer found Brown guilty of the assault. Though Graham had given conflicting accounts of how he had sustained the head injury, the hearing officer found that Graham's original statement to Sergeant Ayars was credible. The hearing officer was especially impressed by the fact that this statement was made immediately following the alleged attack. As a result of this finding, Brown received a sanction of 15 days in disciplinary detention, 270 days in administrative segregation, and 270 days loss of good-time credit.

Following an unsuccessful appeal to the prison superintendent, Brown brought his action under 42 U.S.C. § 1983 (1982). Brown's complaint alleged that under section 9.15(a) of the New Jersey prison regulations, an inmate may be found guilty of violating a prison rule even if the institution fails to prove its case by a preponderance of the evidence. Section 9.15(a) provides that "[a] finding of guilt at a disciplinary hearing shall be based upon substantial evidence that the inmate has committed a prohibited act." N.J.A.C. 10A:4–9.15(a) (1986). Brown argued to the district court that the substantial evidence standard prescribed by the regulation defines a burden of proof that is lower than the preponderance of the evidence standard used in civil cases, and since the preponderance standard "simply requires the trier of fact 'to believe that the existence of a fact is more probable than its nonexistence,'" *In re Winship*, 397 U.S. 358, 371, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring) (quoting F. James, Civil Procedure 250–51 (1965)), the substantial evidence standard allows a finding of guilt even when the trier of fact believes that the accused probably did not commit a prohibited act. According to Brown, the substantial evidence standard is fundamentally

unfair, and, therefore, application of the standard at his disciplinary hearing constituted a violation of his rights under the due process clause of the fourteenth amendment.

In their answer, the defendants-appellees admitted that under section 9.15(a) "substantial evidence" defines a burden of proof that is lower than a preponderance of the evidence. They urged, however, that under the Supreme Court's decision in *Superintendent v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (holding that, a state prison disciplinary determination will withstand a due process challenge if the decision is supported by "some evidence"), the substantial evidence standard defines a constitutionally permissible burden of proof for prison disciplinary proceedings. The district court agreed with the appellees and accordingly, entered summary judgment in their favor. This appeal followed. For reasons stated below, we will vacate the judgment of the district court and remand with instructions to dismiss.

## I.

In his complaint, Brown demands relief in the form of an injunction "barring enforcement of the sanction imposed upon the plaintiff." The parties have informed us that Brown was released from administrative segregation on April 1 of this year; therefore, at this point, Brown merely seeks restoration of his good-time credits and, consequently, speedier release from prison. This is a form of habeas corpus relief, and under the Supreme Court's decision in *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), we are restrained from granting such relief in a suit brought under 42 U.S.C. § 1983. In *Preiser* the Court recognized that a challenge to a prison disciplinary proceeding aimed at restoring good-time credits "is just as close to the core of habeas corpus as an attack on the prisoner's conviction for it goes directly to the constitutionality of his physical confinement itself." *Id.* at

489, 93 S.Ct. at 1836. The Court then went on to hold "that when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.* at 500, 93 S.Ct. at 1841. This holding was reaffirmed in *Wolff v. McDonnell,* 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974), where the Court refused to restore good-time credits in a suit brought under § 1983. The type of relief that Brown seeks here is identical to the type of relief that the Supreme Court refused to grant to § 1983 plaintiffs in *Preiser* and *Wolff.*

A primary concern underlying the *Preiser* decision is the prevention of "end-runs" around the requirement that state prisoners exhaust state remedies before seeking federal habeas relief. *Preiser,* 411 U.S. at 490–93, 93 S.Ct. at 1836–38; *see* 28 U.S.C. § 2254(b) (1982). Thus, if Brown had in fact exhausted his state judicial remedies before filing his federal suit, then we might not be so concerned about his seeking habeas relief in an action brought under § 1983 instead of 28 U.S.C. § 2254 (1982). Brown, however, has not exhausted his state remedies. New Jersey Court Rule 2:2–3(a)(2) provides that all final decisions of state administrative agencies are reviewable, as of right, by the New Jersey Superior Court, Appellate Division. The Department of Corrections is an "administrative agency" within the meaning of Rule 2:2–3(a)(2). *Stufflebean v. Neubert,* 627 F.Supp. 712, 713 (D.N.J.1986); *In re Hawley,* 192 N.J.Super. 85, 89, 469 A.2d 88, 90 (App.Div.1983), *aff'd,* 98 N.J. 108, 484 A.2d 684 (1984). Under the federal habeas corpus statute, when possible, the state must be given "an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights;" *Duckworth v. Serrano,* 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981); therefore, Brown should have pursued an appeal under Rule 2:2–3(a)(2) before petitioning a federal court for habeas corpus relief.[1]

---

1. Appeals from quasi-judicial administrative ac-    tions must be taken within forty-five day from

We note that appellees did not raise the issue of exhaustion before the district court or before this court. While the failure to exhaust state remedies does not deprive us of jurisdiction, *Granberry v. Greer,* —— U.S. ——, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); *Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 2062, 80 L.Ed.2d 674 (1984), it is nonetheless proper for us to raise the issue of exhaustion *sua sponte. United States ex rel. Johnson v. Vincent,* 507 F.2d 1309, 1312 (2d Cir.1974), *cert. denied,* 420 U.S. 994, 95 S.Ct. 1435, 43 L.Ed.2d 678 (1975); *United States ex rel. Wissenfeld v. Wilkins,* 281 F.2d 707, 710 (2d Cir.1960); *see Zicarelli v. Gray,* 543 F.2d 466, 471 (3d Cir.1976). After all, the rule of exhaustion is grounded in notions of comity and is aimed at reducing unnecessary conflict between the courts of the United States and the several states. *See Rose v. Lundy,* 455 U.S. 509, 515, 102 S.Ct. 1198, 1201, 71 L.Ed.2d 379 (1982); *Ex parte Royall,* 117 U.S. 241, 251, 6 S.Ct. 734, 740, 29 L.Ed. 868 (1886). Thus, whether or not the parties exhibit an interest in raising an issue of exhaustion, the court itself has an interest in minimizing conflict with its state counterparts and in maintaining "the constitutional balance upon which the doctrine of federalism is founded." *Schneckloth v. Bustamonte,* 412 U.S. 218, 259, 93 S.Ct. 2041, 2064, 36 L.Ed.2d 854 (1973) (Powell, J., concurring); *see* Shapiro, *Jurisdiction and Discretion,* 60 N.Y.U.L.Rev. 543, 574 (1985) (doctrines affecting the exercise of jurisdiction "are of special concern to the courts because they intimately affect the courts' relations with each other as well as with the other branches of government."). Because the exhaustion doctrine implicates values that may transcend the concerns of the parties to an action, it is not inappropriate for the court, on its own motion, to invoke the doctrine; and we do so here.

In addition to the question of whether it is proper for a federal court to raise an issue of exhaustion *sua sponte,* this case also requires us to consider whether we, as an appellate tribunal, should decide an issue not raised before or considered by the district court. Recently, the Supreme Court spoke to this precise question. *Granberry v. Greer,* —— U.S. ——, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987). In *Granberry,* the Court held that when the respondent in a habeas action fails to raise a meritorious nonexhaustion defense in the district court, the court of appeals must use its discretion and determine, based on the facts of the particular case, "whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of the petitioner's claim." *Id.* at ——, 107 S.Ct. at 1675. The Court further stated that it is particularly appropriate for an appellate court to insist on complete exhaustion if "the case presents an issue on which an unresolved question of fact or of state law might have an important bearing." *Id.* at ——, 107 S.Ct. at 1675. For reasons stated below, we find that complete exhaustion is indicated in this case.

Though the parties agree that section 9.15(a) of the prison regulations prescribes a burden of proof that is less stringent than the preponderance of the evidence standard, we believe that the language of

---

the date of notice of the action. *See* N.J.Ct.R. 2:4–1(b). However, there is no time limitation for the taking of appeals from quasi-legislative administrative actions. *See* Pressler, Current N.J. Court Rules, Comment R. 2:4–1 (1987). Brown's claim involves an attack on the legal validity of a particular administrative rule or regulation formally promulgated by the agency; therefore, if he were to take an appeal under Rule 2:2–3(a)(2), under New Jersey case law, the appeal would be from a quasi-*legislative* action, and the forty-five day time limitation would not apply. *See Monks v. N.J. Parole Board,* 58 N.J.

238, 242, 277 A.2d 193, 195 (1971); *McKenna v. N.J. Highway Auth.,* 19 N.J. 270, 276, 116 A.2d 29, 32 (1955). Further, it appears that the time limitation does not apply in cases involving constitutional challenges. *McKenna,* 19 N.J. at 276, 116 A.2d at 32–33. *See also, Jacobs v. N.J. Highway Auth.,* 54 N.J. 393, 396, 255 A.2d 266, 268 (1969) (suits involving questions of public importance are not subject to the time limitation). We, therefore, do not believe that Brown would now be time-barred from taking an appeal under Rule 2:2–3(a)(2).

the regulation is ambiguous and that its precise meaning has not been definitively resolved by the New Jersey state courts. Section 9.15(a) merely states that "[a] finding of guilt at a disciplinary hearing shall be based upon substantial evidence that the inmate has committed a prohibited act." While it is certainly possible that this language sets forth a burden of proof with which we are heretofore unfamiliar, it is equally plausible that the regulation does not define a burden of proof, but instead dictates a standard of appellate review. Indeed, we have encountered the phrase "substantial evidence" on inumerable occasions and in contexts ranging from review of an administrative action, *e.g., Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985), to review of a criminal conviction, *e.g., United States v. Riccobene*, 709 F.2d 214, 222 (3d Cir.1983), to review of federal prison regulations. *See Henderson v. Carlson*, 812 F.2d 874, 879 (3d Cir.1987) (holding that under 28 U.S.C. § 547.17(f) (1986)[2] the substantial evidence standard is the correct *standard of review* for prison disciplinary determinations). In our experience the phrase invariably describes a standard of review and not a burden of proof. In various contexts, the courts of New Jersey have, too, used the term "substantial evidence" to describe a standard of review. *See, e.g., Henry v. Rahway State Prison*, 81 N.J. 571, 580, 410 A.2d 686, 690 (1980); *In re Public Serv. Elec. And Gas Co.*, 35 N.J. 358, 376, 173 A.2d 233, 242 (1961);

*Mead Johnson and Co. v. Borough of South Plainfield*, 95 N.J.Super. 455, 466, 231 A.2d 816, 821 (App.Div.1967). Thus, it is at least arguable that section 9.15(a) merely sets forth a standard of review.[3]

We are aware that some of the appellees were involved in the drafting of the New Jersey prison regulations; therefore, the appellees' concession that section 9.15(a) refers to a burden of proof is not to be disregarded. However, we cannot ignore the fact that "substantial evidence" customarily describes a standard of review and not a burden of proof. Accordingly, we find that section 9.15(a) is ambiguous; therefore, we are inclined to require complete exhaustion.[4]

In sum, Brown incorrectly sought restoration of good-time credits—a form of relief not available under § 1983. If, after exhausting available state remedies, he still desires such relief from a federal court, he may apply for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982).

## II.

■ In addition to his request for restoration of good-time credits, Brown demanded relief in the form of (1) a declaratory judgment that section 9.15 violates the due process clause and (2) an injunction barring future application of the regulation. However, Brown made no demand for money damages. Thus, in light of our conclusion in the previous section of this opinion,

2. This regulation provides that the prison hearing officer "shall make a decision in accordance with the greater weight of the evidence and one which is supported by substantial evidence manifested in the record of the proceedings."

3. In *Avant v. Clifford*, 67 N.J. 496, 341 A.2d 629 (1975), the Supreme Court of New Jersey considered a constitutional challenge to various New Jersey prison regulations. With respect to the substantial evidence standard, the court stated: "As to the level of evidence required, disciplinary actions are not taken except ... where the inmate involvement is supported by substantial evidence." *Id.* at 530, 341 A.2d at 647–48. It is unclear whether "level of evidence" means "burden of proof" or "standard of review." We are not aware of any other decisions of the New Jersey courts interpreting the regulation in question.

4. We note that in *Granberry*, the Court stated that a court of appeals should not require exhaustion in cases where the habeas applicant does not raise a colorable federal claim. We believe, however, that Brown has raised a colorable federal claim. If he is correct in his assertion that section 9.15(a) provides for a burden of proof lower than a preponderance of the evidence, then it follows that an inmate can be punished for acts which he in all probability did not commit. We have grave doubts about the constitutionality of such a regulation. Also if Brown's interpretation of the regulation is correct, then the district court was incorrect in relying on *Superintendent v. Hill, supra*. In *Hill*, the Court did not address whether the Constitution requires a particular burden of proof in prison disciplinary proceedings. *Hill* only spoke to issues involving standards of appellate review.

Brown's only remaining forms of relief are wholly prospective in nature. For reasons stated below, we hold that Brown lacks standing to seek such relief.

It is axiomatic that in order to invoke the powers of a federal court, the plaintiff must "show an injury to himself that is likely to be redressed by a favorable decision. Absent such a showing exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation." *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). Because the plaintiff must establish that a favorable decision will be likely to redress his injury, the form of relief sought is often critical in determining whether the plaintiff has standing. Thus, as numerous Supreme Court decisions illustrate, a given plaintiff may have standing to sue for damages yet lack standing to seek injunctive relief. *See, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Ashcroft v. Mattis*, 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977); *Warth v. Seldin*, 422 U.S. 490, 514–17, 95 S.Ct. 2197, 2213–14, 45 L.Ed.2d 343 (1975); *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). While a § 1983 plaintiff's allegation that he has suffered from unconstitutional practices may be sufficient to establish standing to sue for damages, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief...." *O'Shea*, 414 U.S. at 495, 94 S.Ct. at 676. In order to obtain standing for prospective relief, the plaintiff must "establish a real and immediate threat that he would again be [the victim of the allegedly unconstitutional practice.]" *Lyons*, 461 U.S. at 105, 103 S.Ct. at 1667.

In this case Brown has done nothing more than allege past exposure to unconstitutional state action.[5] As the foregoing discussion indicates, this is not enough to secure standing to sue for prospective relief. We detect nothing in Brown's complaint or papers that even suggests a real

likelihood, much less an "immediate threat," that he will ever again be the subject of a prison disciplinary hearing. We therefore hold that Brown is without standing to sue for prospective relief.

### CONCLUSION

Because all of Brown's demands for relief are barred by the exhaustion provision of the habeas corpus statute or by the standing requirement grounded in article III of the Constitution, it is not appropriate for us to rule on the merits of Brown's claim at this time. Accordingly, we will vacate the judgment below and remand the case with instructions to dismiss.

---

5. Of course, the injury is continuing in so far as Brown is still in prison. However, for the reasons stated in part I of this opinion, Brown's continuing incarceration cannot serve as a basis for standing in an action brought under § 1983. *See O'Shea*, 414 U.S. at 496, 94 S.Ct. at 676.